# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

CHRIS VEST; BRANDON WOOTTEN )
)
    Plaintiffs, )
)
v. )    Case No. _____
)
KENNETH NIXON; VIRGIL RYAN )
BELCHER; JONATHAN STOYE; NIC )    **JURY TRIAL DEMANDED**
BROOKS; and SHAD TEEMS )
)
    Defendants. )

## COMPLAINT

Plaintiffs, Chris Vest and Brandon Wootten, file this Complaint for false designation of origin, trademark dilution, unfair competition, deceptive trade practices, and conversion against Kenneth Nixon, Virgil Ryan Belcher, Jonathan Stoye, Nic Brooks and Shad Teems (collectively "Defendants") and state as follows in support of their Complaint:

## PARTIES

1. Chris Vest is a citizen of the State of Tennessee who resides in Davidson County, Tennessee.

2. Brandon Wootten is a citizen of the State of Tennessee who resides in Davidson County, Tennessee.

3. Kenneth Nixon is a citizen the State of Tennessee and resides in this District.

4. Virgil Ryan Belcher is a citizen of the State of Tennessee and resides in this District.

5. Jonathan Stoye is a citizen of the State of Tennessee and resides in this District.

6. Nic Brooks is a citizen and resident of the State of Tennessee.

7. Shad Teems is a citizen of the State of Tennessee and resides in this District.

0118114

1

## JURISDICTION AND VENUE

8. Subject matter jurisdiction for the false designation of origin and trademark dilution claims exists pursuant to 28 U.S.C. §§ 1331 and 1338.

9. The Court has supplemental jurisdiction over the unfair competition, deceptive acts and conversion claims pursuant to 28 U.S.C. § 1367(a).

10. The Court has personal jurisdiction over Defendants because Defendants reside in Tennessee and conduct business in Tennessee, and, therefore, have purposefully availed themselves of the jurisdiction of this Court. Further, the acts complained of in this Complaint have occurred in this District.

11. Venue is proper in this Court in accordance with 28 U.S.C. § 1391(b)(1) because all of the Defendants reside in this District, and pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## BACKGROUND

12. In or around 2006, Kenneth Nixon, Nathan Birdwell, Brandon Wootten, Luke McDuffee and Chris Vest (the "Original Members") signed a record deal with Silent Majority Group and named their musical group "Framing Hanley" (the "Band"). Tim Huskinson replaced Nathan Birdwell shortly thereafter.

13. In 2007, the Band released its first album *The Moment* and began a national tour. In early 2008, the Band re-released its first record with bonus songs and began touring internationally and promoting and marketing the Band worldwide.

14. The Band released two additional albums, *A Promise to Burn* and *The Sum of Who We Are*, in 2010 and 2014, respectively.

0118114

2

15. The Band played its final tour in 2015 and, in 2016, released an EP entitled *One Mas More.*

16. The Band has used the Framing Hanley trade name in commerce since 2006 in the music industry – both nationwide and internationally – in connection with the exploitation of the Band's music, sale of merchandise, and live performances, among other uses.

17. In total, the Band released three full-length albums from 2007 – 2015, as well as singles, one EP and multiple music videos.

18. In October 2011, the Band entered into a Termination and Release Agreement with respect to its record deal with Silent Majority. Neither the original recording agreement nor the termination agreement provided for the ownership of the Band's trademark or trade name rights, or otherwise give Silent Majority any rights in or to the Band's name, Framing Hanley.

19. In 2015, the Band collectively decided to cease touring and performing live. The Band's music remains available for purchase, download, streaming, etc., and otherwise continues to be exploited commercially under the Framing Hanley trade name.

20. The Band did not have an operating agreement or any other written agreement expressly providing for the ownership rights in and to the Band's trade name, Framing Hanley.

21. Accordingly, the Band has established common law trademark rights to and ownership rights in the Framing Hanley trade name, and the trade name is owned jointly by the Original Members.

22. After the Band ceased touring, Defendants formed a new musical group, "Sumner Roots," and signed a recording contract with Thermal Entertainment under that name in November 2017.

0118114                                                          3

23. Sumner Roots recorded and, unsuccessfully, released new music, which was not well-received by the public. As a result, Defendants sought to change the name of their new musical group to "Framing Hanley," in an effort to capitalize off of the goodwill and reputation that Plaintiffs and the Band had spent nearly a decade's worth of time and money developing. Defendants sought to do this despite the fact that the Band's original music was still being exploited through a number of music streaming services and offered for sale on music platforms.

24. On April 3, 2018, Defendant Belcher sent a series of text messages to Plaintiff Vest, in which he sought permission to release an album and create a new musical group under the Framing Hanley trade name along with Defendant Nixon. Mr. Vest declined the request and objected to the use of the Framing Hanley name in any capacity beyond the exploitation of the Band's original music or otherwise relating to only the original Band. (*See* Screenshot of Text Exchange between Belcher and Vest, attached as Exhibit A to the Complaint). Mr. Wootten also objected to permitting Nixon and Belcher use the Framing Hanley trade name for Defendants' new musical group.

25. Despite it being made clear that neither Mr. Vest nor Mr. Wootten was agreeable to use the Framing Hanley trade name in connection with Defendants' new musical group, Defendants proceeded to do so anyway.

26. Indeed, on April 3, 2018, the same day Belcher sought and was denied permission from Mr. Vest to use the name, Belcher and Nixon fraudulently submitted an application for federal trademark registration (the "Trademark Application") of the name "Framing Hanley," under International Class 009: "Audio and video recordings featuring music and artistic performances." (*See* Trademark Application, attached as Exhibit B to the Complaint).

27. Belcher and Nixon submitted the Trademark Application under a Section 1(a) actual-use-in-commerce filing basis, stating that the Framing Hanley trademark had been used in commerce since at least as early as 2006.

28. The Trademark Application also provides the following misrepresentation by Belcher and Nixon, "[t]he name FRAMING HANLEY is not the name of an individual person, but is the name of a musical group consisting of *two* primary owners." (emphasis added).

29. Furthermore, under penalty of perjury subject to fine and imprisonment under 18 U.S.C. § 1001, Belcher and Nixon signed a Declaration in the Trademark Application, which provides as follows:

> To the best of the signatory's knowledge and belief, **no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce**, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

> To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

> The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

(emphasis added).

30. Belcher and Nixon made this false Declaration despite their knowledge that Mr. Vest and Mr. Wootten, among other former members, have equal rights in the Framing Hanley trade name and had denied Belcher's previous request to allow Defendants' new band to use the Framing Hanley trade name.

0118114

5

31.   Neither Belcher nor Nixon ever disclosed a single detail about the submission of Trademark Application to Mr. Vest or Mr. Wootten.

32.   Defendants have ignored Plaintiffs' objections and have instead proceeded by using the Framing Hanley name in connection with the promotion, marketing and live performance of their new musical group, new musical recordings, and merchandise, without authorization from Mr. Vest or Mr. Wootten.

33.   Upon information and belief, Defendants began performing under the Framing Hanley name on July 6, 2018. (*See* Screenshot of Web Promotion, Attached as Exhibit C to the Complaint).

34.   Defendants have also made a number of posts on social media in which they deceptively asserted that the Band was reuniting, indicating improperly to the public that the original Band is releasing music and booking live performances.

35.   Defendants continue to commercially exploit the Framing Hanley trademark in a manner that is confusing to the public and in violation of Plaintiffs' intellectual property and ownership rights.

36.   Indeed, a number of consumers have already been confused into believing that the original Band has reformed, and have been misled into purchasing tickets to shows by Defendants and the new musical group, believing the tickets were to see the original Band perform.

37.   Moreover, Defendants have also promoted the upcoming release of new music under the Framing Hanley name, admittedly proclaiming that their new music "doesn't sound like what people are used to from us." (*See* Screenshot of Promotional Post on Twitter and Spotify Promotion, Collective Exhibit D to the Complaint).

38.   The Band's trade name and trademark is being tarnished by Defendants' misleading

use of the Framing Hanley name in connection with, among other things, exploitation of dissimilar music while the original Band's music is still available in commerce under the Framing Hanley name, as well as live performances. (*See* Web Snapshot Promoting Live Shows, Exhibit E to the Complaint).

39. Additionally, Defendants' new musical group performs songs original to the Band in which they confusingly, misleadingly and improperly utilize the trade name and trademark, Framing Hanley.

40. Defendants are also selling merchandise displaying the Band's trade name, which is likely to cause confusion among consumers as to the source of the band merchandise and whether it relates to or is sponsored by the original Band. (*See* Webpage on Shopify, Exhibit F to the Complaint).

41. Defendants have also improperly taken control over the Band's account on SoundExchange, and have unlawfully converted monies received from the exploitation of the Band's music that are owed Plaintiffs in connection with their proportionate ownership share of those works.

42. As a result of Defendants improper, unlawful and deceptive conduct, Plaintiffs and the Band's trade name have been irreparably harmed.

## COUNT I
### False Designation of Origin 15 U.S.C. § 1125(a)
### (All Defendants)

43. Plaintiffs repeat and re-allege each of the numbered paragraphs above as if fully set forth herein.

44. Defendants have and continue to use the Framing Hanley trade name in connection with the promotion and provision of their goods and services as a musical group.

0118114                                                    7

45. By exploiting music under and selling merchandise displaying the Band's trade name, Defendants have falsely and misleadingly used the Framing Hanley trade name in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants' musical group with the original Band, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by the original Band.

46. Defendants' acts have caused Plaintiffs irreparable harm and damage.

**COUNT II**
**Trademark Dilution 15 U.S.C. § 1125(c)**
**(All Defendants)**

47. Plaintiffs repeat and re-allege each of the numbered paragraphs above as if fully set forth herein.

48. The Framing Hanley trade name and trademark is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the original Band.

49. Defendants' use of the Framing Hanley trade name impairs the distinctiveness of the original Band's trade name and trademark.

50. Defendants have diluted the Framing Hanley trade name and trademark through blurring.

51. Defendants' acts have caused Plaintiffs irreparable harm and damage.

**COUNT III**
**Unfair Competition**
**(All Defendants)**

52. Plaintiffs repeat and re-allege each of the numbered paragraphs above as if fully set forth herein.

53. Defendants have no right to use the Framing Hanley trade name and trademark in connection with their musical group's goods or services.

54. Defendants have passed off their musical group's services to the public as if they are the goods or services of the original Band.

55. Defendants have acted with an intent to deceive the public as to the source of its goods and services, and the public has, in fact, been confused or deceived as to the true source of Defendants' goods and services and Defendants' rights and authority regarding the Framing Hanley trade name and trademark.

56. Defendants' unlawful, misleading and improper use of the Framing Hanley trade name, without authorization, constitutes unfair competition under the common law of Tennessee.

## COUNT IV
### Deceptive Acts (Willful Trademark Infringement) Tenn. Code Ann. § 47-18-104
### (All Defendants)

57. Plaintiffs repeat and reallege each of the numbered paragraphs above as if fully set forth herein.

58. Defendants have violated Plaintiffs' intellectual property rights with willful intent and/or in bad faith by, among other things, falsely passing off their new musical group's services as those of the original Band; causing likelihood of confusion or of misunderstanding as to the source, sponsorship or approval of their new musical group's goods or services; causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, the original Band; and/or representing that goods or services have sponsorship, approval by the original Band.

59. Defendants' conduct has caused irreparable harm and damage to Plaintiffs.

60. Plaintiffs are entitled to an award of treble or punitive damages, as well as attorneys' fees, in connection with Defendants' misconduct.

0118114

9

## COUNT V
## Conversion
## (All Defendants)

61. Plaintiffs repeat and reallege each of the numbered paragraphs above as if fully set forth herein.

62. Defendants have misappropriated Plaintiffs' share of revenue received from SoundExchange in connection with the exploitation of the Band's music.

63. Defendants have appropriated Plaintiffs' share of revenue for their own use and benefit.

64. Defendants have intentionally exercised dominion over Plaintiffs' share of the monies paid to the Band by SoundExchange.

65. Defendants' actions are in defiance of Plaintiffs' lawful ownership rights.

WHEREFORE, Plaintiffs respectfully pray that this Court grant the following relief:

A. Monetary damages to Plaintiffs in connection with Defendants' unlawful and improper false designation of origin under 15 U.S.C. § 1125(a);

B. Monetary damages to Plaintiffs, Defendants' profits, and the costs of this action in connection with Defendants' unlawful and improper dilution of the Framing Hanley trade name and trademark under 15 U.S.C. § 1125(c);

C. Monetary damages to Plaintiffs in connection with Defendants' wrongful unfair competition under Tennessee law in passing off their musical group's services to the public as if they are the goods or services of the original Band;

0118114

10

D. Treble damages associated with Defendants' unlawful and improper dilution of the Framing Hanley trade name and trademark pursuant to 15 U.S.C. § 1125(c)(5) and 15 U.S.C. § 1117(a);

E. Treble damages associated with Defendants' deceptive, unfair, willful, intentional and bad-faith conduct under Tenn. Code. Ann. § 47-18-104;

F. Plaintiffs' attorneys' fees under TCPA and Lanham Act;

G. Payment of all SoundExchange monies owed Plaintiffs in connection with their proportionate ownership share of the music exploited;

H. Destruction of all infringing articles containing the Framing Hanley trade name pursuant to 15 U.S. Code § 1118; and

I. Injunctive relief pursuant to 15 U.S.C. § 1125(c)(5), enjoining and restraining Defendants from:

    i. Engaging in any conduct that infringes Plaintiffs' common law trademark rights;

    ii. Offering for sale any goods or services using the Framing Hanley trade name and trademark;

    iii. Engaging in any advertising containing the Framing Hanley trade name and trademark;

    iv. Pursuing registration of the Trademark Application; and

    v. Using the Framing Hanley trade name in any capacity, including in Internet domain names and social media.

0118114

11

Respectfully submitted,

Jenna L. Harris (TN Bar No. 31150)
Chris L. Vlahos (TN Bar No. 2318)
**RITHOLZ LEVY FIELDS LLP**
1221 6th Avenue North
Nashville, TN 37208
(615) 250-3939
jharris@rlfllp.com
cvlahos@rlfllp.com

0118114

12